GRESTLE GARNER v. STATE.

No. A-7982. Opinion Filed July 31, 1931.
(1 Pac. [2d] 787.)

Wilkerson & Brown, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, hereinafter referred to as the defendant, was convicted of burglary in the second degree, and his punishment fixed at imprisonment in the state penitentiary for two years, from which judgment and sentence the defendant appeals.

The evidence on behalf of the state, in substance, shows that Charles Whiteday saw the defendant in the cotton house of Reid-Graham & Morton Gin Company, on the evening of October 14, 1929, about 7:30 o'clock. There were some sacks filled with cotton, one sack on the north side of the cotton gin on the ground. The defendant came out of the cotton house and took the sack lying on the ground and carried it and put it by the wall next to the inside driveway. The witness Whiteday notified the town marshal of Salina, and early the next morning they went down to the gin, and the defendant appeared, and as soon as the man in charge of the gin appeared the defendant proposed to sell him the cotton which was in three sacks. Total weight of the cotton amounted to 220 pounds. The defendant was placed under arrest. The manager of the gin testified to going to work early the morning of the 15th of October, 1929, and when he opened the scale house the defendant wanted to sell him some cotton. The witness

Whiteday and others came up and placed defendant under arrest. The evidence of the state shows that the cotton house was locked the night before by Mr. Delancy when he closed for the day, and it was locked the next morning, but the evidence further tends to show that, when the defendant came out of the cotton house, he closed the door and pressed the lock together.

The defendant denies the cotton in the three sacks he offered to sell to the gin company, through its agent, belonged to the gin company, and states that the cotton had been picked on land belonging to his mother. His sister, testifying for the defendant, corroborated this statement, that the cotton had been picked on her mother's place, near where she and her brother were living.

In rebuttal, the state undertook to show by a witness that he had hauled all the cotton that had been raised on the place belonging to the mother of the defendant. At the close of the testimony the defendant demurred to the evidence on the ground that the same is not sufficient to warrant the rendering of the verdict against him, and the defendant asked the court to direct the jury to return a verdict of not guilty, which demurrer was overruled and the defendant excepted.

Four errors have been assigned by the defendant as grounds for reversal. The first assignment of error is as follows: "Said court erred in overruling motion of plaintiff in error for a new trial."

The motion for a new trial embraces the other assignments sufficiently to consider them under the one assignment. The defendant insists that his case should be reversed because the state did not prove the ownership of the building nor the ownership of the cotton involved; that there is a variance between the pleading and the proof.

An examination of the record shows that the information charged the defendant with breaking into and entering the cotton house by picking the lock and unlocking the door of the cotton house belonging to, and the property of, Reid-Graham & Morton Gin Company, a corporation composed of J. W. Reid, T. O. Graham, and E. C. Morton; said property being located in the town of Salina, and being a place where cotton was stored and kept, and being personally the property of the said Reid-Graham & Morton Gin Company. The evidence relating to the ownership of the cotton that was stored in the said cotton house was given by Mr. B. F. Delancy as follows:

"Q. Did you have any cotton in the cottonhouse on the 15th day of October, 1929? A. Yes.

"Q. What was the condition of the cotton as to being baled or unbaled? A. Unbaled, in the seed.

"Q. Who did the cotton belong to? A. Reid-Graham & Morton Gin Company.

"Q. What was your occupation in October? A. Superintendent of the cotton gin at Salina.

"Q. Do you know who the gin belonged to? A. Reid-Graham & Morton, of Muskogee."

The contention of the defendant is that the variance in the proof and information is that the information alleges that the cotton alleged to have been taken belonged to Reid-Graham & Morton Gin Company, a corporation, and that the proof shows it belonged to Reid-Graham & Morton Gin Company, and the state did not introduce any evidence to show the gin company was a corporation. The defendant cites Simpson v. State, 5 Okla. Cr. 57, 113 Pac. 549, wherein this court held that the weight of authority is that the ownership of the building burglariously entered must be alleged in the indictment or information.

Section 2560, C. O. S. 1921, provides:

"When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

In Gunter et al. v. State, 16 Okla. Cr. 476, 184 Pac. 797, in the body of the opinion this court said:

"When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

In Wells v. Territory, 1 Okla. Cr. 469, 98 Pac. 483, which was a conviction for the crime of forgery of a check by uttering the same to Katz Bros., a firm composed of Jacob Katz and Isaac Katz, a partnership doing business under the firm name of Katz Bros., it was held not to be a fatal variance where the proof shows that Katz Bros. was a corporation. In this case the proof shows the property burglarized belonged to Reid-Graham & Morton Gin Company, and the cotton house burglarized was a part of the gin company property. We think the proof of the ownership of the property is sufficient to sustain the allegations in the information.

The testimony in this case is conflicting, and this court has repeatedly held that, where there was any competent testimony, though conflicting, upon which the jury could reasonably base its verdict, this court would not disturb the same.

The other errors assigned, after carefully examining the same, we hold do not possess sufficient merit to warrant a reversal. The record shows the defendant was ac-

corded a fair and impartial trial. The court properly instructed the jury as to the law applicable to the facts in the case.

No errors appearing in the record sufficient to justify a reversal, the judgment is affirmed.

EDWARDS and CHAPPELL, JJ., concur.